PRESLEY v. FT. WORTH & D. C. RY. CO.

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1912. Rehearing Denied March 8, 1912.)

1. TRIAL (§ 143*)—JURY QUESTION—CONFLICTING EVIDENCE.

Where plaintiff denied the truth of the testimony of defendant's witnesses, an issue of fact was raised for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

2. ARREST (§ 62*) — ARREST WITHOUT WARRANT—AUTHORITY.

The arrest in a town, without a warrant, of one who insisted on riding in a freight car with his shipment, instead of in the caboose, where he belonged, was authorized under Code Cr. Proc. 1911, art. 261, providing that towns may authorize the arrest without warrant of persons found in suspicious places under circumstances indicating that they have committed some felony or breach of peace or are about to do so, although such arrest was not authorized by Code Cr. Proc. 1911, arts. 259, 260, 262, providing that a peace officer may without a warrant arrest an offender for a felony or breach of peace committed in the presence or view of such officer, or when a felony has been committed, and the offender is liable to escape before a warrant can be procured.

[Ed. Note.—For other cases, see Arrest, Cent. Dig. § 144; Dec. Dig. § 62.*]

3. FALSE IMPRISONMENT (§ 22*) — ARREST WITHOUT WARRANT—BURDEN OF PROOF.

Where, in an action for damages for an arrest without a warrant in a town, it conclusively appeared that the arrest was justified, if made under an ordinance passed in accordance with Code Cr. Proc. 1911, art. 261, providing that towns may pass ordinances authorizing the arrest without warrants of persons found in suspicious places under circumstances indicating that an offense has been committed or is threatened, the burden was upon the plaintiff to show that no such ordinance had been passed.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 98, 99; Dec. Dig. § 22.*]

4. FALSE IMPRISONMENT (§ 11*)—PARTY ASSISTING OFFICER.

In view of the fact that a citizen who fails to respond to the command of an officer to assist in making an arrest is guilty of the violation of Code Cr. Proc. 1911, art. 45, one who participates in making an arrest in good faith and merely in response to the command of an officer is not liable in damages therefor, although it may ultimately appear that the officer had no right to make the arrest.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 75–77; Dec. Dig. § 11.*]

5. FALSE IMPRISONMENT (§ 15*) — LIABILITY OF MASTER—ACTS OF SERVANT.

An employer is not liable for a wrongful arrest participated in by his employés solely at the request of an officer, and not by reason of any supposed duty owed by them to the employer.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67; Dec. Dig. § 15.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by J. A. Presley against the Ft. Worth & Denver City Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Montgomery & Britain and Coombes & Coombes, for appellant. L. H. Mathis, C. C. Huff, and Orville Bullington, for appellee.

GRAHAM, C. J. This suit originated in the district court of Wichita county by appellant filing suit against appellee therein for the sum of $10,000 actual and $15,000 exemplary damages for an alleged wrongful arrest, false imprisonment, and personal injuries incident to the arrest. At the conclusion of the introduction of evidence on a trial before a jury, in response to a peremptory instruction by the court, it returned a verdict for appellee, defendant below, on which judgment was rendered and from which appellant, plaintiff below, has appealed to this court.

In view of the disposition made of the case below and the questions raised in this appeal, we have found it necessary to carefully peruse the entire record as a means of enabling us to make proper disposition of the appeal. There is some conflict in the evidence as to whether or not appellant, in the presence of the officer who made the arrest, committed a breach of the peace, thus warranting an arrest without warrant for that reason, and there is also a serious conflict in the evidence as to the nature and extent of the injuries sustained by appellant, but, as we view the record, there is no conflict found in the evidence as to the following facts:

Appellant was moving from Cook to Haskell county, transporting his effects by rail, he accompanying them en route, having loaded his effects in a car at the initial point where they were billed to Wichita Falls, over the line of the Missouri, Kansas & Texas Railway of Texas. Having reached Wichita Falls, and being desirous of going over the line of appellee from that point to Chilicothe, a station on that road, where he then expected to reship over the Orient, he and an authorized agent of appellee at Wichita Falls properly executed a written contract covering the transportation of his effects, as well as himself, from Wichita Falls to Chilicothe, which contract among other things provides as follows: "We the undersigned persons in charge of the live stock mentioned in the within bill of lading, in consideration of the pass granted us by the Ft. Worth & Denver City

Railway Co. and of other covenants and agreements contained in said bill of lading, all of which for the consideration aforesaid, are accepted by us and made a part of this our contract, and all of the terms and conditions of which we hereby agree to observe and be securely bound thereby, and we do hereby expressly agree that we will remain in the caboose attached to the train while the train is in motion; get on and off the caboose when the train is still; *not remain on any car except the caboose* and not get on and off of any car while in motion, or while switching is done. This bill of lading does not entitle the holder hereof or any other person to ride on any train except in accordance with the conditions hereof especially provided in reference thereto and then only when such persons are active caretakers of the live-stock shipped by virtue of this bill of lading." The proof shows conclusively that appellant was the only person accompanying said shipment who had any interest therein or rights thereto.

Under said contract, the car containing appellant's effects was placed in one of appellee's freight trains at Wichita Falls, and started on its journey to Chilicothe. Soon after getting out of Wichita Falls, appellee's conductor, or one of its brakemen in charge of said train, discovered that appellant was riding in the car with his effects, and not in the caboose, as required by the contract, and told appellant, in effect, that he had no right to ride in said car, and must get into the caboose and ride there. Appellant did not do as requested, but continued to remain and ride in the car with his effects. Thereafter each time the train stopped a similar notice was given and request made by appellee's conductor with the same results, and at the last stop made before reaching Electra, the point where the trouble occurred, appellee's conductor and brakeman, having become satisfied that another person was also riding in the car with appellant and his effects, who was not entitled to ride on that train, demanded of appellant that he either cease riding in said car and ride in the caboose, as his contract and the rules of the company required, or they could not further carry his car, and would set it out of the train, whereupon appellant insisted on his right to ride in the car where he was, and in effect declared he would not ride in the caboose. At this juncture the conductor, because of his other duties not having before called on appellant for his evidence of right to ride on any part of the train, called on him for his contract or evidence of right to be on any part of the train and about the same time one of the brakemen started to climb into the car where appellant was, whereupon appellant presented a pistol, stating that that was his ticket or right to ride, and further stated in effect that he would

fill with bullet holes the first man who came into the car. The train crew realizing they could not get appellant out of the car and into the caboose, nor cut the car out of the train so as to go on without it, without in all probability having a serious if not a fatal difficulty with appellant, and, by this time being fully convinced that another person was riding in the car with appellant who had no right to be on that train, concluded to call an officer when they reached Electra, and with his assistance either have appellant ride in the caboose or cut appellant's car out of the train and leave it at Electra, and, on reaching Electra for the purpose above indicated, they called an officer without appellant so knowing, and informed the officer in substance of the facts above set out, who at once went with his pistol drawn and presented to the car where appellant was, and either demanded that appellant come out of the car or surrender, whereupon appellant, after telling the officer to shoot, turned as if to get his gun, when the officer seized him by one of his legs, and demanded that he surrender. As the appellant neither surrendered nor came out of the car, and the officer was unable to overpower him and thus effect an arrest, he called on appellee's conductor and brakeman to assist him, which they did, and together they succeeded in overpowering appellant and in arresting him, and in doing so appellant received the injuries of which he complains, though no more force was used in making the arrest than was necessary. By this time it had been learned beyond question that another man had been in fact riding in the car with appellant with his acquiescence and consent, and who, in fact, had been concealed therein by appellant from Wichita Falls, and who had no right to be on any part of said train. He was also arrested by the officer, and the two, with the assistance of the conductor and brakeman, acting under request of the officer, were placed in the calaboose, where appellant remained for three hours, during which time the officer, who was a constable, communicated over the phone with the county attorney of that county at Wichita Falls, with the view of learning the charge under the facts that should be lodged against appellant. On learning the proper charge to be lodged against appellant, the officer so informed him, and he was released on bond. There was a justice of the peace at Electra, but he was a new man, and was not able to inform the officer as to the nature and kind of charge that should be preferred against the appellant; hence the necessity of obtaining said information from the county attorney. The proof is clear that the only part the conductor and brakeman took in the arrest and imprisonment was under the command of the officer who made it, and that no employé of the company asked that an arrest be made or called the

officer for the purpose of having an arrest made, though the officer elected to make the arrest on arriving at the train, as above indicated, after being informed of the facts.

Under the foregoing facts, and as we view the record there are none others that would throw any light on the legal questions involved, the first legal question to be solved is: Did the officer have a legal right to make the arrest without a warrant (for he had no warrant)? If so, then we think under the law no recovery could be sustained against the appellee because of the part taken in the arrest by its conductor and brakeman.

[1] It is contended by appellee that appellant cursed and abused the officer at Electra, and in the presence and hearing of the officer, and we confess that the evidence introduced strongly tends to support this contention, but appellant denies the truthfulness of this statement thereby raising an issue of fact which appellant had a right to be submitted to the jury and which was denied him, and for that reason the judgment below cannot be sustained on this contention. If there was no controversy under the evidence as to this issue, the trial court's action we think would be fully sustained by article 599, Penal Code, article 247, Code of Criminal Procedure, and article 251, Code of Criminal Procedure, as these articles would warrant the arrest by the officer, and article 45, Code of Criminal Procedure, and article 245, Penal Code, we think would fully protect the conductor and brakeman in the part they took in said arrest.

[2] We think under the facts in this case the judgment of the trial court cannot be sustained under the provisions of either article 259, 260, or 262, Code of Criminal Procedure, as found in "Revised Criminal Statutes of Texas of 1911," but, after mature deliberation, we have reached the conclusion that the acts of the trial court should be sustained because of one, if not all, of the following reasons: Article 261 of the Code of Criminal Procedure, as found in "Revised Criminal Statutes of Texas of 1911," is as follows: "The municipal authorities of towns and cities may establish rules authorizing the arrest, without warrant of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten or are about to commit some offense against the laws." The evidence in this case shows conclusively that the arrest was made in Electra, and there is no evidence showing that an ordinance had not been passed by the proper authorities of Electra in accordance with the provisions of said article 261, and that warranted the arrest made.

[3] Under these conditions, we think that as against appellant's contention that an illegal arrest was made, and in view of the presumption that exists that a public officer has done his duty, at least until the contrary has been shown, the burden was on appellant to prove that no such ordinance had been passed as warranted the arrest, and, having failed so to do, we think he failed to make out a case of unlawful arrest; that is, we think simply proving that the arrest could not be justified under articles 259, 260, and 262, above referred to, does not show an illegal arrest when the facts in this case are considered in connection with article 261, above referred to. While no witness so testified, we think that the evidence as a whole, by circumstances, shows beyond question that the employés of the company who participated in the arrest actually believed that the officer had the right to make it, and, further, that it was their duty to assist him when commanded so to do. Under the facts in this case, we entertain a serious doubt whether it follows as a matter of law that, if the employés would be personally liable to appellant, it follows under the facts of this case that the company would be liable for the acts of said employés in participating in the arrest. Under the doctrine announced in the case of Texas Midland Ry. Co. v. Dean, 98 Tex. 517, 85 S. W. 1135, if appellee's employés had advised or requested the arrest or had voluntarily participated in it, it would appear that the company would have been liable, provided the arrest were illegal; but in this case it must be borne in mind that, while appellee's employés procured the officer to be present, it is not shown that they even knew he had no warrant, while it is shown that they thought he had the right to make the arrest, and it is further shown that they did not voluntarily participate in it, but did so only under the command of the officer under an honest belief that it was their duty so to do. As we view the Dean Case, supra, Judge Williams bases the conclusion that the company could be held liable on the proposition that the employés voluntarily participated in the arrest.

[4] We cannot believe that sound public policy would require that a citizen be held guilty of a violation of one of our penal laws as is provided in article 45, Code of Criminal Procedure, in the event of his failure to respond to the command of an officer in making an arrest and at the same time mulct him in damages for obeying said command, because it might ultimately appear that the officer did not as a matter of fact and law have a right to make the arrest, and we think this view is in effect sustained in the case of Weatherford v. State of Texas, 31 Tex. Cr. R. 530, 21 S. W. 251, 37 Am. St. Rep. 828, and is directly sustained in the case of Firestone v. Rice, 71 Mich. 377, 38 N. W. 886, 15 Am. St. Rep. 266, and in the notes to Tryon v. Pingree, 67 Am. St. Rep. at page 421. As the employés did not voluntarily participate in the arrest made, but did so only under the command of an officer whom they believed had a right to make

the arrest, and believing at the same time that he had the right to command them, and that it was their duty to obey, we are inclined to the opinion that the employés themselves are not shown to be liable to appellant for damages arising from the arrest, even though the officer himself had no right to make it. If, however, under all the facts the employés who participated in the arrest were liable to appellant, it by no means follows that the company was liable to appellant for the acts of its employés in participating in the arrest. If the record had shown it to be the duty of said employés under their employment to make, or cause to be made, an arrest, and they had caused this arrest made, and it were unlawful, or if they had voluntarily participated in the arrest, not having induced or caused it, it not being directly their duty to their master so to have done, it being shown to have been in the furtherance of the master's business and so intimately connected with it, it might follow that the master would be liable for the act of the servant, if the arrest were unlawful.

[5] It not appearing, however, that it was the duty of the employés to make the arrest or cause it to be made, and it appearing that said employés in no way induced or encouraged it to be made, or voluntarily participated in it, and it further appearing that their participation in the arrest did not arise from any supposed duty to the master, but arose solely and alone from an independent cause, that of the command made by the officer, they at the time believing it their duty to comply, and that the officer had the right to make the arrest and to so command them, it would appear to us that the company should not be held liable, even if the employés themselves could be, because the act appears to have been one induced wholly from a cause other than the employés' relation to the master.

Believing that under no theory of the law could a verdict be sustained in appellant's favor against appellee, under the pleadings and the evidence introduced, it follows that there was nothing to submit to the jury on the trial below, and that the trial court in our opinion did not in giving the peremptory instruction commit error.

The judgment of the trial court will therefore in all things be affirmed, and it is so ordered.