# MAY 17, 1939

### FRED ADAMS V. THE STATE.

No. 20344. Delivered April 5, 1939.
Rehearing Denied May 17, 1939.

The opinion states the case.

*Reid & Reid* of Abilene, for appellant.

*J. R. Black*, Dist. Atty., of Abilene, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

HAWKINS, Judge.

Conviction is for theft of property over fifty dollars in value, punishment assessed being two years in the penitentiary.

On July 28, 1938, Allen Hatchett was working at an excavation project in Abilene. He had in his pocket-book $77.00 which he left in his trousers pocket when he changed into his work clothes. The money was gone when he quit work. Hatchett was in the habit of making a note of the serial number of the bills which came into his possession, and had made a memorandum on the back of an envelope of the serial numbers of his bills up to the amount of $63.00. He reported the theft to the officers, who took the serial numbers. Prior to the day of

the theft appellant had been working on the excavation project but was not working that day. In the investigation someone reported that appellant had been seen on the day of the theft about the place from which the money was taken. This information was conveyed to the officers. Some twenty hours after the theft was discovered appellant was arrested and $35.00 in $5 bills were found in his shoe, five of which bills bore serial numbers corresponding with those on five bills of that denomination which had been stolen.

Objection was interposed to the testimony of the officers as to finding the money in appellant's shoe, and the comparison of the serial numbers, and to the introduction of the money thus found, on the ground that the arrest of appellant was illegal and therefore that the contemporaneous search was not authorized. The jury was retired and the trial judge investigated the question in the absence of the jury. The objection was overruled, which ruling is the basis of several bills of exception which may be considered together. It was developed from the testimony heard by the trial judge that the officers had no warrant of arrest for appellant and sought none although they had been looking for him since shortly after the theft was reported. At the time appellant was observed near the scene of the theft no suspicious conduct on his part was noted. Some witness simply saw him near the place where the excavating was being done and reported that fact to the officers. They knew appellant had previously been convicted for robbery, and had been investigated upon theft charges, and had frequently been arrested by the police and that he bore a bad reputation. It is apparent that the officers suspected him at once upon learning that he had been in the vicinity of the theft. He and another party who had also been seen near the place of the theft were both arrested. The other party was released when none of the stolen money was found in his possession. The officers testified that appellant would also have been released if the search of him had been fruitless. When arrested appellant was in the courthouse. There had been no report that he was about to escape, and his conduct did not indicate any such intention on his part. Without discussing them it is sufficient to say that the evidence excludes the right to arrest appellant without a warrant under the provisions of articles 212, 213, 214 and 215 of the Code of Criminal Procedure. It is the State's contention that the arrest and consequent search was authorized under art. 325 C. C. P., which is as follows: "All persons have a right to prevent the consequences of theft by seizing any personal property which has been

stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To *justify such a seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."*

It is clear that the officers "believed", or at least were suspicious,—perhaps the last word is more accurate—that appellant had stolen the money, such belief or suspicion being predicated alone upon appellant's bad reputation and presence in the vicinity where the theft occurred. In Luera v. State, 12 Tex. Cr. App. 257, parties were pursuing accused in the "belief" that he had stolen a horse. The court gave in charge to the jury what is now Art. 325 C. C. P., without any explanation thereof. This court in discussing the matter said: "But it (the charge in question) was given to the jury without explanation or qualification, and, standing alone as it does, was calculated to mislead the jury, and cause them to believe that the deceased and his brother, upon the mere belief on their part that the defendant had stolen a horse, had the legal right, without warrant, to pursue and take him dead or alive, and that he had no right to resist any attack they might make upon him. Such is not the law, and the facts of this case did not call for, or justify the charge as given."

It appears from the above holding that "belief" alone is not sufficient. The right of an officer or individual to act under said article must of necessity turn on the construction of the words "there must, however, be *reasonable grounds* to suppose the property to be stolen." The question involved was considered in Hepworth v. State, 111 Tex. Cr. R. 300, 12 S. W. (2d) 1018, and the opinion expressed that the term "reasonable grounds" meant practically the same "as probable cause" which would authorize a search without warrant. It was said: "By virtue of article 325, all persons have a right to prevent the consequences of theft, not only by seizing the property which has been stolen, but by arresting the offender. Moreover in attempting to do these things authorized by this article, persons so acting would not be guilty of false imprisonment, should there be reasonable ground to suppose the property stolen, and the party taken to be the offender, notwithstanding it should thereafter transpire that the property was not stolen, and that the person taken was not a thief."

The language copied is a quotation from Henderson, et al v. U. S. Fidelity & Guaranty Co., reported in 298 S. W. 404. See also Bennett v. State, 122 Tex. Cr. R. 381, 55 S. W. (2d) 847;

Porez v. State, 29 Tex. Cr. R. 618; Childress v. State, 107 Tex. Cr. R. 10, 294 S. W. 586; Hammond, et al v. State, 121 Tex. Cr. R. 596, 49 S. W. (2d) 779. It is not the result of the search which determines the legality of the arrest and the search contemporaneous therewith, but the right to arrest and search under said Art. 325 must depend upon whether the party exercising such right had beforehand "reasonable grounds to suppose"—or "probable cause to believe" that the property seized had been stolen and that the party arrested was the thief. In order to furnish such "reasonable grounds" or "probable cause" said party must have information or knowledge amounting to more than mere suspicion. It appears here that the officers had nothing more than suspicion, however well founded the result of the search proved it to have been. It follows that in our opinion the learned trial judge fell into error in not sustaining the objection to evidence discovered as the result of the arrest and search.

Notwithstanding our holding that the court committed error as heretofore indicated, we have found in the record undisputed evidence which leads us to believe that a reversal of the judgment should not follow because of the error pointed out. The district attorney was well acquainted with appellant, and during the time the present charge against him was being investigated by the grand jury, and at a time when appellant was not under arrest, the district attorney had a conversation with appellant. We quote from the testimony of the district attorney as follows: "I said, 'Fred, they found $35.00 of the money in your shoe, didn't they?' He said, 'That's right.' I said, 'They checked that money and it was part of the money that was stolen from that boy down there.' He said, 'That's right.' I said, 'There is no explanation you could give the grand jury as to why you had that money in your shoe.' When I asked him if there was any explanation that he could give for having that money in his shoe he said 'No.' He said he could not."

It occurs to us that this was a direct admission by appellant that he was in the unexplained possession of a part of the recently stolen property. It has been held that under such circumstances the unexplained possession of a part of the recently stolen property would justify the conclusion that the party in such possession was the taker of all of it. This being true, we see no escape from the conclusion that, in view of appellant's admission, we would be unauthorized to reverse the judgment, notwithstanding the error heretofore pointed out.

The judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant says: "The contentions of appellant are, in his motion for a rehearing, that there was no corpus delicti established in this case, and this conviction should not stand. It is the further contention of appellant, that corpus delicti cannot be established in this case, without wholly disregarding the Constitutional and Statutory rights guaranteed to the appellant." Examining this contention in the light of the evidence, it is observed that the facts making out the substantive crime were shown otherwise than by appellant's confession to the district attorney. There was no doubt that the offense for which appellant was tried had been committed by somebody. The district attorney stated in his testimony that the conversation he had with appellant was "with reference to this offense for which he is being tried today." His testimony also showed that he and appellant were discussing the theft of the money of the injured party. According to his version, appellant admitted that $35 of the stolen money had been taken from his shoes, and, further, that he could give no explanation for his possession of said money. Manifestly, the corpus delicti was not shown solely by appellant's confession. We quote from Mitchell v. State, 6 S. W. (2d) 753, as follows:

"Appellant contends that the evidence is insufficient to sustain the conviction, basing his position on the claim that the corpus delicti is shown solely by his confession. The facts making out the substantive crime were shown otherwise than by appellant's confession. There was no doubt that the offense for which appellant was tried had been committed by somebody. Such being the case, appellant's confession of his guilty connection with the crime was sufficient to justify his conviction. In the case of Clark v. State, 85 Tex. Cr. R. 153, 210 S. W. 544, this court stated the rule as follows:

" It is the settled law of this State that the confession of one accused of crime, of his connection therewith, will justify his conviction when the facts making out the substantive crime have been shown otherwise.'

"See, also, Attaway v. State, 35 Tex. Cr. R. 403, 34 S. W. 112; White v. State, 40 Tex. Cr. R. 366, 50 S. W. 705; Sullivan v. State, 40 Tex. Cr. R. 633, 51 S. W. 375; Landreth v. State, 44 Tex. Cr. R. 239, 70 S. W. 758."

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.