Nathan REINER, Individually and d/b/a Reiner's, Appellant,

v.

William F. MARCEAU, Appellee.

No. 13516.

Court of Civil Appeals of Texas.

Houston.

June 23, 1960.

Opinion on Filing of Remittitur
Sept. 8, 1960.

Dow & Dow, Harry Dow, Edmund L. Cogburn, and M. Leon Kalvort, Houston, for appellant.

Charles B. Spicer, Jr., Pasadena, for appellee.

WERLEIN, Justice.

This suit was brought by William F. Marceau, appellee, for damages for conversion and lost rental of a typewriter and adding machine, which appellee in connection with his rental business rented to one J. H. Shumaker, who illegally pawned the same to appellant, Nathan Reiner, a licensed pawnbroker, d/b/a Reiner's, to secure a loan of $40. The machines were alleged by appellee to have a reasonable market value of $125 and $175, respectively. Appellant defended on the ground that the Houston Police Department had placed a "hold" upon said machines, and had instructed appellant to retain the same as evidence in a criminal prosecution. The case was tried without a jury and the court rendered judgment for appellee in the sum of $435 for loss of reasonable rental and ordered the machines returned to appellee.

By his first group of Points, appellant complains of the court's judgment in finding against him because he held the machines pursuant to directions of the Houston Police Department acting under authority of Articles 933 through 943 of the Vernon's Ann.Code of Criminal Procedure, and also because of the making of and the refusal to make certain findings of fact.

The evidence shows and the court in essence found that appellee was the owner of the machines on April 16, 1956; that on

that date he rented and delivered them to said Shumaker in Pasadena at an agreed monthly rental of $5 per month for the typewriter and $15 per month for the adding machine, which appellee testified was the reasonable market rental value; that Shumaker thereafter (on the same day) converted the machines and delivered them to appellant to secure a loan of $40; that the delivery to appellant was without appellee's knowledge or consent; and that appellee did not know where the machines were until notified by the Pasadena Police Department.

The court also found in substance that on November 1, 1956 appellee went in person to appellant's place of business, proffered sufficient evidence of his ownership of the machines and made demand therefor, and that appellant wrongfully refused to deliver the machines to appellee. The evidence shows that appellee made such demand on September 15, 1956 and that appellee's attorney telephoned appellant on November 1, 1956 and also made demand. The court then found that appellant continued to wrongfully withhold the machines until the time of trial and that he had no legal cause to do so, to appellee's damage in the sum of $435.

Appellant excepted to Findings Nos. 6, 7 and 8 on the ground that such findings of the court that the machines were wrongfully withheld were conclusions of law and not based on facts found by the court. Appellant also objected to such findings because of insufficiency of the evidence and on other grounds, and requested certain findings of fact which were called to the court's attention but not given, including a request that the court find that on the 30th day of June, 1956 the City of Houston Police Department placed a "hold" upon the two machines which was not released until trial, and that such "hold" was made by the Police in the normal and lawful performance of their duties and that the withholding of the machines by appellant was at all times subject to and in obedience to the orders of the Houston Police Department, and that appellant was acting in good faith in receiving the machines and held such machines as an agent of the Police Department of Houston from and after June 30, 1956.

It is clear that appellant had no better right to hold the machines than did Police Officer Davidson, who supervised and checked pawn shops for the Houston Police Department. The evidence shows that Davidson placed the "hold" on the machines on June 30, 1956 and never released the same until trial, which was nearly three years later. He testified that on June 28, 1956, the Dallas Police Department informed the Houston Police Department that Shumaker was in jail in Dallas and that he had several pawn shop tickets pertaining to typewriters and adding machines, some of which were from Houston, and thereafter he, Davidson, placed a "hold" on the machines in question. He testified in effect that it was customary to place a "hold" whenever there was a possibility of property being stolen or where the ownership of property was questioned, and that his duties consisted of checking pawn shops every day for stolen items; and that he talked to Mr. Irvin Reiner and told him to mark the property "hold" and put it up. He further testified that Lt. Supple of the Houston Police instructed him to check pawn shops for any items under the name of Shumaker and that such request came from the Houston Police Department and no place else; that he could have taken the equipment down to the Police station or to the Police Property Room, but instead he left it at the pawn shop and had the pawn shop operator take care of it. When asked whether there was any reason to keep the "hold" on the machines in question, he replied that he never was asked to remove it, and that Shumaker never had been brought to trial, to his knowledge, and that he thought he was in the penitentiary from some other city, and that to his knowledge no criminal prosecution was filed in Houston regarding

said machines, although he thought that he had gone before the grand jury and had Shumaker indicted but that Shumaker had never been brought back to Houston to his knowledge.

It is our opinion that Davidson legally came into the custody of the machines in question under Article 933 of the Vernon's Ann.Code of Criminal Procedure since he had reasonable grounds or probable cause to believe they were stolen. Art. 325, Vernon's Ann.Code Crim.Proc.; Adams v. State, 137 Tex.Cr.R. 43, 128 S.W.2d 41. After seizing such property and placing a "hold" thereon, it was the duty of Davidson, under Art. 935, Vernon's Ann.Code Crim.Proc., to immediately file a schedule of the same, and its value, with the magistrate or court having jurisdiction of the case, certifying that the property had been seized by him and the reason therefor. There is no evidence in the record that this was done. It is our view that after seizing the property the officer could hold it for only such reasonable time as might be required to file the schedule, as provided in Article 935. After filing such schedule he would then hold the property under such order as the magistrate or proper court might give, as provided in Article 933, or after an examining trial, as provided in Article 936 of the Vernon's Ann.Code. of Crim.Proc., the property might be restored to the true owner if so directed by written order of the magistrate. See Murray v. Lyons, Tex.Civ.App.1906, 95 S.W. 621. Since the officer did not comply with Article 935, it is our opinion that neither he nor appellant had the legal right to withhold the property from the true owner after the expiration of such reasonable time.

On September 15, 1956 appellee presented his evidence of ownership and made demand for the return of the property. This was 2½ months after the seizure of the machines and certainly after the expiration of a reasonable time in which the officer was required to file the schedule.

When appellee showed that he proffered evidence of ownership of the machines, made demand therefor, and that appellant refused to deliver the same to him, he made out a prima facie case. It then devolved upon appellant to show justification for such refusal. This he failed to do. Appellant, therefore, became liable for the rental value of said machines beginning with September 15, 1956 when demand was made by appellee, or in any event beginning with November 1, 1956 when demand was made for the return of the machines by appellee's attorney, the latter date having been found by the court.

We think there was ample evidence that at the time appellee made demand for the machines, his title and ownership thereof were not questioned. He testified that appellant stated that he would turn over the machines to him if he paid the $40 pawn ticket thereon, but would not otherwise do so. Appellee's attorney testified to the same effect.

Findings of Fact Nos. 6, 7 and 8, to the effect that the machines were wrongfully held, are conclusions of law. Since request was made that findings of fact and conclusions of law be made separately, the court should have complied with such request. In view of our holding herein, any error in failing to do so has not resulted in harm to appellant.

Appellant requested the court to find that on the 30th day of June, 1956 the City of Houston Police Department placed a "hold" upon the two machines, which was not released until trial. There was evidence to such effect and the finding should have been made. However, in view of our holding, we think that such failure on the part of the court does not constitute reversible error, because appellant would not be protected by any such hold order of the Police after the expiration of a reasonable time from the date the machines were seized. We think the same thing is true with respect to the request that the court

find that the Police "hold" was made in the normal and lawful performance of the duties of the Police.

■■ Appellant also requested the court to find that at all times subsequent to June 30, 1956 appellant was holding such machines subject to and in obedience to the orders of the Houston Police Department. Such finding would be contrary to the testimony of appellee and his attorney, who testified that appellant was willing to turn the machines over to him if the $40 pawn ticket was paid. We think there was no error in refusing to make the requested finding. There was no reversible error in the court refusing to find that appellant received the goods in good faith and that the machines in question were held by appellant as an agent for the Police Department, in view of our holding that the applicable Articles of the Penal Code were not complied with, and the good faith of the appellant would be immaterial insofar as actual damages are concerned. The fact that appellant may have held the machines for the Police Department subsequent to the time when demand was made by appellee therefor would not constitute a defense to appellee's claim for loss of reasonable rental.

In his next group of Points, appellant asserts that the court erred in finding that he had no legal cause to refuse to deliver the machines to appellee, and that such finding and the finding of $435 damages are not supported by sufficient evidence, and also because the finding of damages was based on an incorrect measure of damages, and the amount awarded is excessive. It is our view that the court's finding, that at all times material to the suit appellant had no legal cause to refuse to deliver the machines to appellee upon demand, is actually more of a conclusion of law than a finding of fact. We think such conclusion, however, is proper and based upon the evidence. Of course, if appellee had made demand for the machines before the expiration of a reasonable time after the machines were

seized, such finding or legal conclusion would not be correct. No harm has resulted to appellant by such finding in view of our holding.

The general rule of damages for loss of use of personal property is stated in 42 Tex. Jur., pp. 582, 583, § 65, as follows:

> "In trover the plaintiff is ordinarily not entitled to recover the value of the use of the property during the period of detention, the theory being that the allowance of interest upon the value of the property from the time of conversion is equivalent to the value of the use of the property detained. But where interest will not fully compensate the plaintiff he can recover the value of its use or hire in lieu of interest, although a recovery should not be allowed of both the value of the chattel and the value of its use without deducting the depreciation incident to use."

■ In the present case the court ordered the machines returned to appellee. Therefore, there would be no deduction for depreciation. The testimony of appellee shows that the reasonable rental value of the two machines together was $20 per month and the reasonable value thereof was at most only $250. They were rented to Shumaker for only one month, and he paid part of the rental for that month. Although appellee alleged that he had suffered damages in the sum of $300, as loss of reasonable rental from November 1, 1956 to February 1, 1957 and prayed for only $400, the court entered judgment for $435 rental. Based upon appellee's own uncontroverted testimony, the loss of reasonable rental during such period could amount to only $60. The fact that the machines were rented for one month for a reasonable rental of $20 per month does not establish the correct measure of damages where the machines were held for as many as 15 months or longer, although it might warrant allowing rental for the three months from November

1, 1956 to February 1, 1957 at such rate, or a total rental of $60.

The applicable rule is stated in 42 Tex. Jur., p. 584, § 65, as follows:

"Where the plaintiff was deprived of the use of the property for a long period of time the damages cannot ordinarily be ascertained according to the value of such use by the day or the month, but for the entire period during which the plaintiff was deprived of the use; the reason for this rule being that during the long period there would be many days in which, on account of the weather or for other reasons, the property could not be used. But where the plaintiff has shown that he could have used the property at all times after the taking, damages for the value of the use may be computed upon a daily rate of what the property would have brought under a contract of hire."

In the instant case there is no evidence as to how frequently or for what periods or for what percentage of the time the machines in question would have been rented. There is no evidence that might enable the trial court to determine the actual damages suffered by the plaintiff from deprivation of the use of the machines in question for a long period of time or a period as long as 15 months. See Page v. Hancock, Tex.Civ.App.1947, 200 S.W.2d 421, ref., n.r.e.; Brown v. Spector, Tex. Civ.App.1934, 70 S.W.2d 478.

Appellee's attorney in oral argument before this Court stated that the year 1957 was a typographical error and should be 1958. At the rate of $20 per month from November 1, 1956 to February 1, 1958, the rental at $20 per month would amount to $300. It is our view that the rental should be limited to the period from November 1, 1956 to February 1, 1957, not only because appellee has sued for lost rental only for such period but also because if 12 months are added to such period it would not be possible to apply the correct measure of damages for lack of evidence. In our opinion, while there is evidence in the record which will support a judgment for $60, there is no pleading or evidence which will support an award for more than $60. The judgment of the trial court is excessive in the amount over and above $60.

That part of the trial court's judgment returning the machines to appellee has not been attacked and is not before this Court and will remain undisturbed. We have concluded that the amount of damages awarded for loss of rental of the machines is excessive in the sum of $375. If appellee will file in this Court a remittitur of $375 on or before July 8, 1960, the judgment of the trial court will be reformed accordingly and, as reformed, will be affirmed; otherwise, the judgment of the trial court as to damages will be reversed and the cause will be remanded for a new trial.

## On Filing of Remittitur

On June 23, 1960, we indicated by opinion in writing that if appellee would file a remittitur of $375 on or before July 8, 1960, which time was later extended, the judgment of the Trial Court would be reformed and, as reformed, would be affirmed; otherwise the judgment of the Trial Court would be reversed and the cause remanded. Appellee has timely filed the suggested remittitur of $375.

Accordingly, as of this date, the judgment of the Trial Court is reformed by deducting the amount of $375 from the judgment recovered by appellee, and, as so reformed, is affirmed.

Four-fifths of the costs of this appeal will be taxed against appellee, William F. Marceau, and one-fifth against appellant, Nathan Reiner, individually and d/b/a Reiner's.

Motion for rehearing may be filed by either party within fifteen days after this date.